# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | ) CRIMINAL NOS. 1:CR-10-183 |
| | )                      and 1:CR-11-003 |
| v. | ) (Judge Rambo) |
| | ) |
| DAVID RICHARD DODD, II | ) |
| | ) ELECTRONICALLY FILED |

## DEFENDANT'S SENTENCING MEMORANDUM

AND NOW comes your Defendant, David R. Dodd, II, by and through his counsel, Cunningham & Chernicoff, P.C., who files this Sentencing Memorandum wherein he files Objections to the Pre-Sentence Investigation Report, a downward departure based upon departure considerations set forth in the U.S.S.G. Guidelines, and consideration of a non-Guidelines sentence pursuant to the provisions of 18 U.S.C. §3553(a).

I. **OBJECTIONS TO THE PRE-SENTENCE INVESTIGATION REPORT**

1. Defendant, David R. Dodd, II, filed a Memorandum in Opposition to the Pre-Sentence Investigation Report. Defendant, David R. Dodd, II, incorporates by reference the arguments contained in the Objections to the Pre-Sentence Investigation Report.[1]

2. The summary of Defendant Dodd's objections to the Pre-Sentence Investigation Report is as follows:

    a. The Pre-Sentence Investigation Report improperly draws the conclusion that all monies paid to IDC came from loan draw requests of federal funds and thus all monies seized are traceable to federal funds. This conclusion

---

[1] A copy of the Objections to the Pre-Sentence Investigation Report is being hand delivered to the Court as it is not part of the formal record.

is not supported by the record. The record, in the possession of the government, reflected IDC bought and sold equipment secured with non-federal monies; IDC had been capitalized with non-federal monies; IDC had earned money from its investments; IDC had not been paid in full for work it had completed; and IDC received a final $586,500.00 payment for its work from a non-federal source. The Pre-Sentence Investigation Report fails to trace over approximately $921,500.00 in non-federal funds and what proportion of those non-federal funds were invested in the account it seized and the loss incurred based upon the source of the funds deposited in the seized account.

b. The Pre-Sentence Investigation Report overstates the damages incurred by the victims as the result Dodd's conduct during the construction of the Project as Dodd's actions were not the direct cause the losses alleged by the victims. The Report adopts this Court's finding of loss in the MVRA Hearing the Court should not have held due to the complexity of the issues, resulted in the setting of damages without affording the Defendant the ability to develop evidence through discovery, and was once which did not allow the Defendant the ability to prove the breach of the various contractors.

c. The Pre-Sentence Investigation Report fails to state or establish a casual relationship between Dodd's conduct and the determined actual or implied victims' losses set forth in the Pre-Sentence Investigation Report.

d.   The Pre-Sentence Investigation Report identified the existence of ten (10) or more victims when in fact there are less than ten (10) victims involved.

e.   The Pre-Sentence Investigation Report adopts the premise the Dodd was restricted to paying only those contractors on whose Payment Applications the funding sources released monies.  The loan agreement between Dodd and the City and County provided he could use HUD funds distributed to him to pay any "eligible expense" of the construction.  The Pre-Sentence Investigation Report did not find that Dodd had distributed HUD funds directly to himself or for his benefit or on any expenses other than eligible expenses of the construction project.

f.   The Pre-Sentence Investigation Report does not take into consideration that Dodd spent the money received from the CAC to pay not only the Kimbob, Inc.'s invoice but also for other eligible expenses pursuant to CAC grant.

g.   The Pre-Sentence Investigation Report states Dodd committed bankruptcy fraud in the Advanced Communications Agency Chapter 11 bankruptcy where the property he is alleged to have sold was not the property of Advanced Communications Agency and not involved in the Advance Communications bankruptcy.

h.   The Pre-Sentence Investigation Report finds Dodd committed fraud by failing to disclose on a Uniform Residential Loan Application issued at a residential loan closing with Countrywide Bank his business obligation to

>PNC Bank. The Pre-Sentence Investigation Report fails, most importantly, to disclose the loan was underwritten solely using "verified income" and was not underwritten utilizing a fully documented loan application and identifies Countrywide was solely relying on Dodd's verified income for approval and not documentation in making the loan; fails to set forth the obligation owed to PNC Bank was a business and not a personal obligation and was not required to be set forth in the Uniform Residential Loan Application; fails to set forth the loan had been previously disclosed by Dodd to Countrywide; and fails to set forth the Uniform Residential Loan Application was solely completed by Countrywide based upon its review of Dodd's tax returns and public records.

i. The Pre-Sentence Investigation Report alleges Dodd double billed for IDC's work. The Pre-Sentence Investigation Report states IDC had been paid in full for its work in April 2007. However, Dodd sought a draw on Commerce Bank's line of credit for an alleged $300,000.00 outstanding IDC obligation. The Pre-Sentence Investigation Report fails to note at the time of the draw request was made by Dodd to Commerce Bank, IDC had returned $800,000.00 to the Cameron Real Estate bank account and at the time of the request was still owed $800,000.00 for work it had completed. Moreover, the Report fails to note terms of the line of credit did not

    require itemization of requested draws and the $300,000.00 withdrawn from the line of credit was used to pay contractors and other invoices related to the Project and none towards the payment of the IDC invoice.

j. The Pre-Sentence Investigation Report doubles the damages by erroneously including a $586,500.00 payment made in April 2008 to IDC by Cameron Real Estate as if the payment had been made from Section 108 funds and as a result reports it as a separate Section 108 fund loss distinct from that of the $860,454.72 loss claimed by certain other contractors from Section 108 funds.

k. The Pre-Sentence Investigation Report fails to note that PNC alleged loss is secured by a mortgage on the Canby Street property.

l. The Pre-Sentence Investigation Report includes interest accrued on the City loan draws. The draws from the City loan equaled $1,572,845.23 but the Report sets the loss at $3,750,000.00, a figure which includes accrued interest. Thus, the loss is overstated by $2,177,154.77.

m. The specific offense to which Dodd entered his plea was a theft of a government benefit. The proper measure of damage in a theft of a government benefit is the "net profit" derived from the theft not the gross value of the benefit or contract.

      n.    The offense does not justify an enhancement for sophisticated means as the formation of IDC and the ownership of its stock by Private Venture Trust was not sophisticated in the sense that is was neither complicated nor technical.

3.    The essence of the objections to the Pre-Sentence Investigation Report among other specific objections, involes the measure of the loss and its affect on the calculation of the offense level. The objection is stated as follows:

    The Pre-Sentence Investigation Report fails to reasonably connect the otherwise legitimate payment for pre-cast concrete work performed by IDC to Mr. Dodd's refusal to pay for contractors' work which the City and County had reviewed for payment, but were not paid by Mr. Dodd as the result of the City's Section 108 funds administrator, Linda Walker, who had advised Mr. Dodd not to pay for contractors' work which was not supported by Buy America Certificates as required by the Contract and HUD regulations.

## II.   DEPARTURES UNDER THE PROVISIONS UNITED STATES SENTENCING GUIDELINES

### A.   DEPARTURES PURSUANT TO USSG §5H1.6

Dodd understands that a departure under §5H1.6 is not favored warranted simply because of family ties and responsibilities. However, family responsibilities are relevant to the determination of restitution or fines. In this case, the Court has already found Dodd, under the provisions of M.V.R.A., to be responsible to various creditors in the total amount of $20,943,635.13. The Pre-Sentence Investigation Report indicates that the total monthly cash

flow of Defendant Dodd and his wife to be $2,000.00 and total assets, including equity in a jointly owned marital property, to be $115,399.00. Defendant Dodd believes these are facts which the Court should consider in setting of any fine. There is no evidence that Defendant Dodd's wife had any involvement in the offenses to which Dodd pleaded guilty nor with any of the conduct set forth in the Indictments.

### B.   **DEPARTURE PURSUANT TO U.S.S.G. §5H1.8 – CRIMINAL HISTORY**

Defendant Dodd has no criminal history prior to his Indictment in this matter. It is understood that this is a matter that is addressed in the Sentencing Table but it is an important consideration.

### C.   **DEPARTURE PURSUANT TO U.S.S.G. §5K1.1**

The plea agreement contains a provision which provides if Defendant Dodd cooperates with the United States and if the United States believes that Defendant Dodd has provided "substantial assistance" pursuant to Section 5K1.1 of the United States Sentencing Guidelines, the United States could request the Court to depart below Guideline range when fixing a sentence.

### D.   **DEPARTURE PURSUANT TO U.S.S.G. §2B1.1 COMMENT 19(c) DOWNWARD DEPARTURE**

Defendant Dodd seeks a downward departure from Guideline considerations as he believes that the specific offense characteristics set forth in the Pre-Sentence Investigation

Report's of a loss of $17,995,838.00 results in an offense level which substantially overstates the seriousness of the offense. Defendant Dodd believes that in setting the offense level, the appropriate definition of loss in this matter would be the "net profit" that he unlawfully earned as the result of the unlawful interest he had in IDC which represented a conflict of interest under HUD regulations. No opportunity was ever given to Defendant Dodd to offer evidence on this issue as it was not relevant at the M.V.R.A. hearings and has not been determined in a sentencing hearing to date. It is Defendant Dodd's opinion that the net profit derived from the contract IDC had with Cameron Real Estate was approximate between $500,000.00 and $600,000.00. The Pre-Sentence Investigation Report sets the loss as $17,995,838.00 based upon this Court's determination of damages of the victims and all other persons in the M.V.R.A. hearing less. Defendant Dodd seeks a downward departure from the Guidelines pursuant to U.S.S.G. §2B1.1 comt. 19(c) Downward Considerations.

III.  **SENTENCING UNDER 18 U.S.C. §3553(a)**

Dodd seeks application of the sentencing factors set forth in §3553(a) which warrants a downward departure in sentencing.

   A.  **18 U.S.C. §3553(a)(1) – HISTORY AND CHARACTERISTICS OF THE DEFENDANT**

Dodd attended Villanova University and graduated, receiving a Bachelor's Degree from that institution. Dodd worked a number of jobs after graduating from college. Eventually, Dodd created and formed his own printing business. At one point just prior to the inception of

the construction of the Project, Dodd had in his employ approximately 70 people. Dodd has no prior arrests or convictions, according to the Pre-Sentencing Report, has lead an exemplary life except for his participation in IDC and the two (2) trusts associated with it which are the subject of this litigation.

B. **18 U.S.C. §3553(a)(2) – THE NEED FOR THE SENTENCE TO REFLECT SERIOUSNESS OF THE OFFENSE, TO PROMOTE RESPECT FOR THE LAW, AND TO PROVIDE JUST PUNISHMENT FOR THE OFFENSE**

Dodd believes that while a sentence of imprisonment may be required to reflect the seriousness of his offense, in order to promote respect for the law, and to provide just punishment, these goals can be achieved by a sentence less severe than the one within the Guidelines range.

C. **§3553(a)(2)(B) – GENERAL DETERRENCE**

Dodd is of the opinion the facts of the case support a finding that the CVCC Project was stopped in the middle of being constructed and for over a year $600,000.00 remained in the IDC account and was not transferred from IDC to the Private Venture Trust accounts. The record also reflects that IDC never paid Dodd anything. Moreover, Dodd agreed to the confiscation of not only IDC funds but other funds for which there may have been legitimate arguments regarding the appropriateness of confiscation. In this case, Defendant Dodd believes that a lengthy sentence is not necessary to provide general deterrence.

D. **§3553(a)(2)(C)–SPECIFIC DETERRENCE**

In this case, it is assumed that a sentence involving a period of imprisonment will be imposed against Defendant Dodd. A lengthy sentence is not need, however, to deter Defendant Dodd from future criminal conduct. Once Defendant Dodd returns to his family, the chastening effects of the period of his imprisonment, the attendant negative publicity, the loss of not only his business but all of his worldly assets, and the need to provide support for his family will provide adequate deterrence against any potential future criminal conduct.

E. **§3553(a)(2)(D)(6) and (7) ARE NOT RELEVANT IN THIS CASE.**

Dodd has no need for educational or vocational training and is not in need of immediate medical care. As a result, the imposition of a shorter, non-Guidelines sentence will not violate an unwarranted sentencing disparity as Dodd is the only person who was Indicted in this matter. There is no one else who was engaged in similar conduct and with whom to compare in the sentencing other than Defendant Dodd.

Wherefore, Defendant, David R. Dodd, II, respectfully requests this Honorable Court to enter a non-Guidelines sentence based upon the Objections to the Pre-Sentence Investigation Report, the Departure provisions of the United States Sentencing Guidelines, and the relevant provisions of 18 U.S.C. §3553(a).

Respectfully submitted,

CUNNINGHAM & CHERNICOFF, P.C.

Date: February 7, 2014  By:  /s/ Jordan D. Cunningham
Jordan D. Cunningham, Esquire
PA Supreme Court I.D. No. 23144
P.O. Box 60457
Harrisburg, PA 17106-0457
Telephone: 717-238-6570

# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | ) CRIMINAL NOS. 1:CR-10-183 |
| | ) and 1:CR-11-003 |
| v. | ) (Judge Rambo) |
| | ) |
| DAVID RICHARD DODD, II | ) |
| | ) ELECTRONICALLY FILED |

## CERTIFICATE OF SERVICE

I do hereby state that on the **7th** day of **February 2014**, I served a true and correct copy of the foregoing in the above captioned matter, by electronic mail or by placing the same in the United States mail, first-class, postage prepaid, in Harrisburg, Pennsylvania, as follows:

> William A. Behe
> Assistant U.S. Attorney
> 228 Walnut Street
> P.O. Box 11754
> Harrisburg, PA 17108
> Email: william.behe@usdoj.gov

> /s/ Angela L. Hewitt
> Angela L. Hewitt
> Legal Assistant

F:\Home\AHEWITT\DOCS\D-F\DODD, DAVID\SENTENCING MEMOS 020614\SENTENCING MEMO 5 020714.wpd