UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | Criminal Nos.  1:CR-10-183 |
| | ) | 1:CR-11-003 |
| v. | ) | (Judge Rambo) |
| | ) | |
| DAVID RICHARD DODD, II | ) | |

GOVERNMENT'S SENTENCING MEMORANDUM

I.   **PROCEDURAL HISTORY**

On June 9, 2010, an 11-count Indictment was returned by a grand jury in Harrisburg docketed to Criminal No. 1:CR-10-183.  Counts I, III, and V charged theft of federal funds in violation of 18 U.S.C. § 641 and covered various periods of time.  Counts II, IV, and VI charged misappropriation of federal funds in violation of 18 U.S.C. § 666.  The period of time for each count corresponded to the related count charging theft of federal funds.  Counts VII and VIII charged the defendant with money laundering in violation of 18 U.S.C. § 1956(a)(1)(B)(i) covering different periods of time in each count.   Count IX charged false

statements in violation of 18 U.S.C. § 1014. Count X alleged bank fraud in violation of 18 U.S.C. § 1344. Count XI was a forfeiture allegation.

On January 5, 2011, a separate 11-count Indictment was returned by a grand jury in Harrisburg at Docket No. 1:CR-11-003. Counts I through VII charged wire fraud in violation of 18 U.S.C. § 1343 and covered separate dates for each count. Counts VIII and IX alleged money laundering in violation of 18 U.S.C. § 1957. Count X charged concealment of assets in a bankruptcy proceeding in violation of 18 U.S.C. § 152. Count XI was a forfeiture allegation.

Defendant entered into a plea agreement with the United States and on November 15, 2011 pled guilty to Counts II and VII of the Indictment at 1:CR-10-183 and agreed to the civil forfeiture of the assets listed in Count XI at paragraphs 2(a)-(f), (h), and (i). Defendant also agreed to the civil forfeiture of assets listed in Counts XI at paragraph 2C of the Indictment at 1:CR-11-003. Paragraph 1 of the plea agreement advised the defendant of the following:

> The defendant understands that conduct that was the basis for any and all dismissed counts of the Indictments and all other relevant conduct will be used to determine the defendant's base offense level under the Sentencing Guidelines.

Paragraph 14 of the plea agreement provided the following:

> At the sentencing, the United States will be permitted to bring to the Court's attention, and the Court will be permitted to consider, all relevant information with respect to the defendant's background, character and conduct including the conduct that is the subject of the charges which the United States has agreed to dismiss, and the nature and extent of the defendant's cooperation, if any. The United States will be entitled to bring to the Court's attention and the Court will be entitled to consider any failure by the defendant to fulfill any obligation under this agreement.

On January 25, 2012, Senior U.S. Probation Officer John Vought disclosed the pre-sentence report to the parties. Vought determined that the defendant was a category I offender. Vought initially determined that the base offense level was 30. Pursuant to U.S.S.G. § 2S1.1(b)(2)(B), a two-level increase was applied because the offense involved sophisticated means. An additional two-levels were added under U.S.S.G. § 2S1.1(b)(3) because Vought determined the offense also involved sophisticated laundering. The adjusted offense level was 34. Three levels were taken off for acceptance of responsibility resulting in a total offense level of 31. The advisory guideline

imprisonment range for a defendant with a total offense level of 31 and a criminal history category I is 108-135 months.

The defendant filed myriad objections to the presentence report. Some of the main objections to the presentence report involved the probation officer's determination of loss and identification of victims. On October 31, 2012, a hearing commenced that was restricted to the issue of restitution. The initial hearing lasted four days and concluded on November 6, 2012. An additional day's worth of testimony was permitted by the Court and testimony was taken on February 21, 2013. On October 15, 2013, the Court found in favor of the government and against the defendant on the issue of restitution and found that the defendant was liable for restitution in the aggregate amount of $20,943,635.13.

On December 13, 2013, Vought issued a revised presentence report and advised the parties that the new report should be substituted in its entirety for the report issued January 18, 2012. Vought calculated in the new report that the defendant should receive a 20-level increase under U.S.S.G § 2B1.1(b)(1)(K) because the amount of loss was more that $7 million but less than $20 million dollars. The

4

amount was less than the Court's restitution figure of $20,943,635.13.
Vought concluded that $2,168,399.62 in lost interest and expenses
incurred by Metro Bank and the City of Harrisburg, while eligible for
inclusion as restitution, was excludable as "loss" under U.S.S.G.
§ 2B1.1.  See revised PSR at ¶ 39.  Vought also concluded that the total
amount of funds laundered was $1,515,080.53 and that the amount of
loss incurred by the victims was $17,955,838.51.  Vought also revised
¶ 52 by removing the previously included two-level enhancement under
U.S.S.G. § 2B1.1(b)(10)(C).  Dodd is still considered to be a criminal
history category I offender.  The total offense level remains 31 and the
advisory custody range remains 108-135 months.

On December 23, 2013, Dodd filed additional objections to the
revised presentence report and addendum.  Dodd now asserts that the
"loss" calculation is wrong and that  Vought should have used
Application Note 3(F)(ii) of § 2B1.1 of the Sentencing Guidelines.  That
Application Note, encaptioned "Special Rules", provides that "the
following special rules shall be used to assist in determining loss in the
cases indicated…".  (Emphasis added). Subparagraph (ii) is entitled
"Government Benefits" and provides as follows:

> In a case involving government benefits (<u>eg</u>,
> grants, loans, entitlement program benefits), loss
> shall be considered to be not less than the value
> of the benefits obtained by unintended recipients
> or diverted to unintended uses, as the case may
> be.  For example, if the defendant was the
> intended recipient of food stamps having a value
> of $100 but fraudulently received food stamps
> having a value of $150, loss is $50.

That objection has not been addressed by Probation Officer

Vought.

## II.    <u>SENTENCING PROCEDURE</u>

When imposing sentence, the district court must follow a three-

step process.  First, courts must determine to calculate a defendant's

Guidelines sentence precisely as they would have before <u>United States</u>

<u>v. Booker</u>, 453 U.S. 220 (2005); <u>United States v. Gunter</u>, 462 F.3d 327,

247 (3d Cir. 2006).  Second, district courts must formally rule on the

motions of both parties and state on the record whether they are

granting a departure and how that departure affects the Guideline

calculations, and take into account the Third Circuit's pre-<u>Booker</u> case

law which continues to have advisory force.  Third, district courts must

exercise their discretion by considering the relevant § 3553(a) factors in

setting the sentence they impose regardless of whether it varies from

the sentence calculated under the Guidelines.  During the third step,

district courts should engage in 'a true, considered exercise of

discretion, including a recognition of, and response to, the parties' non-

frivolous argument.'  United States v. Freidman, 658 F.3d 342, 359 (3d

Cir. 2011)(quoting United States v. Jackson, 467 F.3d 834, 841 (3d Cir.

2006)).  These steps ensure "that the district court's decision-making

process is both logical and fair," and it is recommended that the district

court consider the steps separately and sequentially.  United States v.

Freidman, supra, at 361.

In arriving at the base offense level, the court is to consider

§ 1B1.3 of the Guidelines entitled "Relevant Conduct (Factors that

Determine the Guideline Range)."  That section provides in pertinent

part as follows:

> (a)  Chapters Two (Offense Conduct) and Three
> (Adjustments).  Unless otherwise specified, (i)
> the base offense level where the guideline
> specifies more than one base offense level, (ii)
> specific offense characteristics and (iii) cross
> references in Chapter Two, and (iv) adjustments
> in Chapter Three, shall be determined on the
> basis of the following:
>
> (1) (A)  all acts and omissions committed,
> aided,   abetted, counseled, commanded,

induced, procured, or willfully caused by the
defendant; . . .

that occurred during the commission of the
offense of conviction, in preparation for that
offense, or in the course of attempting to avoid
detection or responsibility for that offense;

(2)   solely with respect to offenses of a character
for which § 3D1.2(d) would require grouping of
multiple counts, all acts and omissions described
in subdivisions(1)(A) and (1)(B) above that were
part of the same course of conduct or common
scheme or plan as the offense of conviction;

(3)   all harm that resulted from the acts and
omissions specified in subsections (a)(1) and (a)(2)
above, and all harm that was the object of such
acts and omissions; and

(4)   any other information specified in the
applicable guideline.

Application Note 1 in the Commentary to § 1B1.3 makes it clear

that the information to be considered is very broad:

The principles and limits of sentencing
accountability under this guideline are not
always the same as the principles and limits of
criminal liability.  Under subsections (a)(1) and
(a)(2), the focus is on the specific acts and
omissions for which the defendant is to be held
accountable in determining the applicable
guideline range, rather than on whether the
defendant is criminally liable for an offense as a
principle, accomplice or conspirator.

8

Application Note 2 also specifically provides the

following:

> The requirement of reasonable foreseeability
> applies <u>only</u> in respect to the conduct, <u>i.e.</u>, acts
> and omissions) of others under subsection
> (a)(1)(B).  It does not apply to conduct that the
> defendant personally undertakes, aids, abets,
> counsels, commands, induces, procures, or
> willfully causes; such conduct is addressed under
> subsection (a)(1)(A).  (emphasis added).

Probation Officer Vought, in determining the base offense level,

considered the base offense level where the guidelines specified more

than one base offense level, considered the specific offense

characteristics and cross-references in Chapter 2, and adjustments in

Chapter 3, as well as all relevant conduct as he was required to do

under § 1B1.3.  The issue, therefore, is whether Vought properly used

this Court's findings regarding the number of victims and the amount

owed as restitution to determine the loss amount under § 2B1.1? [1]

---

[1] Vought recently added to the loss amount in paragraph 52.  However,
the additional loss amounts have no bearing on the guideline
calculations.

## (a) THE AMOUNT OF RESTITUTION WAS PROPERLY USED TO CALCULATE LOSS FOR GUIDELINE PURPOSES.

As stated earlier, the first step in the three step process is for the sentencing court to determine the base offense level. In this matter, the base offense level has been determined to be 30. (See PSR at p. 15, ¶ 52). Under U.S.S.G § 2S1.1(a)(1), the base offense level is the offense level for the underlying offenses which are covered by U.S.S.G. § 2B1.1. According to that section, the base offense level computation begins at level 6. Vought determined the loss amount to be $17,955,838.51. This figure was arrived at by taking this court's restitution order of $20,943,635.13 and backing out $2,168,399.62 in lost interest and expenses incurred by Metro Bank and City of Harrisburg which, while appropriately determined to be part of restitution, was considered by Vought to be excludable from the loss calculation under U.S.S.G. § 2B1.1. This resulted in the loss amount of $17,955,838.51. Mr. Vought determined that the total amounts of funds laundered was $1,515,080.53. (PSR at p. 13, para. 39). That resulted in a 20-level increase from the starting point of level 6. Four additional levels were added because the probation officer determined the offense involved 10

or more victims and because the offense involved a misrepresentation or
other fraudulent action during the course of a bankruptcy proceeding.
Each of those called for a two-level increase.  Additional enhancements
took the guidelines to level 34.  The total offense level is 31 after a
three-level reduction for acceptance of responsibility is applied.

Pursuant to § 2B1.1 Application Note 3, "Actual Loss" means the
reasonably foreseeable pecuniary harm that resulted from the offense.
"Pecuniary harm" means harm that is monetary or that otherwise is
readily measurable in money.  "Reasonably Foreseeable Pecuniary
Harm" means pecuniary harm that the defendant knew or, or under the
circumstances, reasonably should have known was a potential result of
the offense.

For purposes of estimating the amount of loss, the Court need only
make a reasonable estimate of the loss.  <u>See</u> Application Note 3(C).
The Application Notes goes on to provide:

> The sentencing judge is in a unique position to
> assess the evidence and estimate the loss based
> upon that evidence.  For this reason, the Court's
> loss determination is entitled to appropriate
> deference.  <u>See</u> 18 U.S.C. § 3742(e)(f).

Additionally, the Background section to § 2B1.1 describes the broad spectrum of conduct the court can consider when determining loss:

> Background:  This guideline covers offenses involving theft, stolen property, property damage or destruction, fraud, forgery, and counterfeiting (other than offenses involving altered or counterfeit bearer obligations of the United States).
>
> Because federal fraud statutes often are broadly written, a single pattern of offense conduct usually can be prosecuted under several code sections, as a result of which the offense of conviction may be somewhat arbitrary. Furthermore, most fraud statutes cover a broad range of conduct with extreme variation in severity.  The specific offense characteristics and cross references contained in this guideline are designed with these considerations in mind.
>
> The Commission has determined that, ordinarily, the sentences of defendants convicted of federal offenses should reflect the nature and magnitude of the loss caused or intended by their crimes. Accordingly, along with other relevant factors under the guidelines, loss serves as a measure of the seriousness of the offense and the defendant's relative culpability and is a principal factor in determining the offense level under this guideline.

Paragraph 2 of the above-quoted Background is particularly applicable here.  Dodd was charged in two separate Indictments with

12

twenty criminal theft and fraud crimes and two separate forfeiture allegations. As the Sentencing Commission notes, because of the breadth of criminal conduct in fraud cases, touching on many criminal code sections, the selection of the offense of conviction is often arbitrary. For these reasons, the sentencing court is to consider a host of factors to make sure the sentence imposed addresses the harm caused by the defendant's actions or inactions. This is also why the plea agreement advises the defendant that "conduct that was the basis for any and all dismissed counts of the Indictments and all other relevant conduct will be used to determine the defendant's base offense level under the Sentencing Guidelines." (Plea Agreement ¶ 1).

In this case, the district court held five days' worth of hearings on the question of restitution. While restitution under the MVRA and loss under the guidelines are calculated differently, the fact that the court made a determination at the conclusion of the restitution hearings as to the amount of restitution owed and the identifiable victims, as well as the fact that the victims' losses were the direct and proximate result of the defendant's conduct, goes beyond that which is required to determine loss for purposes of the guidelines. Indeed, the restitution

13

finding in this case provides a more precise measure of loss for guideline purposes.

In most instances the loss is greater than the amount of restitution because restitution is confined to the loss actually caused by a defendant's offense while the amount of loss for guideline purposes is not so constrained and may also be calculated on the basis of relevant conduct as defined in § 1B1.3.  Relevant conduct however cannot be used to calculate restitution which is limited to the loss proximately caused by the offense of conviction to victims, i.e., those directly and proximately harmed.  18 U.S.C. § 3663A.

Although similar, the determination of loss is different for the guidelines then it is for restitution purposes.  This reflects their differing purposes.  The purpose of restitution is to compensate and restore the victim to his or her pre-offense state.  By contrast, guideline sentencing functions as a measure of not only harm, but also the risk of harm that was posed by the offense, and the relative culpability of the defendant.  While economic loss for guidelines purposes is defined as "the greater of actual loss or intended loss", the MVRA, in contrast, requires that restitution be based on "the amount of loss actually

14

caused by the defendant's offense." See United States v. Dokich, 614
F.3d 314, 319 (7th Cir. 2010). While in some instances restitution may
be greater than loss for guidelines purposes, the more frequent
situation is that loss is greater than restitution. This is because
relevant conduct used in the guidelines loss analysis is based upon an
expanded view of the offense of conviction rather than just the offense of
conviction that is used for restitution purposes. See U.S.S.G
§ 1B1.13(a). Some courts have concluded that the restitution
determination may require a more specific determination then that
under the guidelines, because restitution is based solely on actual loss.
See United States v. Parker, 553 F.3d 1309 (10th Cir. 2009). Economic
loss under the guidelines includes such aspects as a defendant's gain or
the intended loss. These are not involved in the determination of
restitution, which can only be based on actual loss to the victims.

Another difference involves the concept of reasonable
foreseeability. The MVRA added the causation standard of the victim
being directly and proximately harmed, which led to the development of
a "reasonably foreseeable" analysis for restitution. The restitution
question is whether it was reasonably foreseeable that the defendant's

offense would cause this harm to the victim. Under the sentencing guidelines, however, the reasonably foreseeable standard found in the relevant conduct Application Notes is only used for the inclusion of acts by those acting jointly with the defendant in the computation of harm attributable to the defendant.

The United States believes that the plea agreement negotiated by the parties allows for the use by this Court of its findings as to the number of victims and amount owed in restitution when determining loss.

The symmetry present in this case between restitution and loss comes from the fact that the parties agreed to remove the restrictions found in the MVRA that restitution can only be ordered for victims of the offense of conviction. The parties essentially allowed that the court to infuse the concept of relevant conduct into the MVRA and allow for restitution to be ordered to victims of crimes other than the offense of conviction if it could be established that they were directly and proximately harmed by the defendant's conduct. While this reasonable foreseeability concept under the guidelines is restricted to joint conduct, the fact that this more restrictive finding was made by the district court

in the restitution hearings allows for that amount of restitution to be used under the more expansive analysis that goes into determining loss under the guidelines.  This Court concluded that the defendant's conduct, criminal and otherwise, involving the Capital View Commerce Center (CVCC) project and his theft of funds belonging to certain contractors led to the substantial economic harm described in and found by the Court in its restitution Memorandum and Order.

As discussed earlier, while different standards are used for determining restitution and loss, and frequently loss determinations are greater than restitution amounts, there is no prohibition against the same amount being be used for both.  In United States v. Black, 338 Fed.Appx. 235, 2009 WL 2055134 (C.A. 3) Pa)), the Third Circuit Court of Appeals found that Judge Rambo neither erred in determining the restitution amount in that case nor in using that same amount for guideline loss calculation purposes because the amount was an accurate representation of  actual loss.  Here, given the expansive embrace of the guidelines as provided in the Background to § 2B1.1, which calls for the court to deal with the harm caused by the defendant, not just by the offense of conviction, it seems logical and appropriate to take this

17

Court's determination as to both the number of victims and economic harm (without the inclusion of interest) for restitution purposes and use that amount to determine the base offense level for loss.

Therefore, the United States believes that Vought's determination of the base and total offense level, particularly in the area of loss, was accurate and asks this Court to adopt the entire presentence investigation report.

As stated earlier, the defendant takes the position that the record is not complete and that Vought's calculations are incorrect. Dodd contends that the district court's determination of loss is exclusively controlled by Application Note 3(F)(ii). However, there is nothing in that Application Note that prohibits the court from considering, or directs the court to exclude, the other provisions of the guidelines, such as relevant conduct, or the other Application Notes and the Background provisions to § 2B1.1. Rather, it is the view of the United States that Application Note 3(F)(ii) is simply, as stated, to be "used to _assist_ (the court) in determining loss… ". The district court can in fact use and shall use this section in determining the loss, but not to the exclusion of other guidelines provisions including relevant conduct.

18

It is interesting to note that the defendant does not provide the court with an amount to use to establish loss (or profits) under his interpretation of the loss guidelines.  The defendant simply says the record is not complete.  If that is the case, and the defendant's restrictive approach is used, it is presumed the defendant would say that his <u>total</u> offense level should be 6, the starting point before any enhancement for loss amounts.[2]   If that were the case, and were the court to resolve this and the many other objections in the defendant's favor, the United States would still ask that a sentence be imposed within the advisory guideline range found to be applicable by Probation Officer Vought.  There are two methods that allow for this.

First, in Application Note 20(A) to § 2B1.1, the Sentencing Commission informs the sentencing courts that an upward departure may be warranted in cases "in which the offense level determined under this guideline substantially understates the seriousness of the offense.

---

[2] Even under the defendant's restrictive analysis of the guidelines, the amount would be no less than $3,528, 020.00 which represents the entire amount of federal funds received by IDC from either Dauphin County, the City of Harrisburg, or Cameron Real Estate.  Because Dodd was an unintended recipient, meaning he obtained those funds only through fraud and would never have been entitled to those funds if his involvement with IDC was known, the total amount of funds received would be used to determine loss under § 3(F)(ii).

In such cases, an upward departure may be warranted." There follows several factors which the Sentencing Commission describes as "non-exhaustive." The defendant's conduct in this case, as detailed by this Court in its Memorandum regarding the number of victims and restitution, constituted a crushing and devastating economic blow to multiple businesses that were involved with Dodd in the CVCC project. Consequently, based on the rationale supplied by the Sentencing Commission, this Court at step two of the sentencing proceedings could upwardly depart on motion of the United States pursuant to § 5K2 of the guidelines to compensate for the guideline's failure to address and for substantially understating the seriousness of Dodd's offenses.

A second basis for a departure would be under the sentencing factors found at 18 U.S.C. § 3553(a).

At step three of the sentencing process, the court is to consider the various factor set forth in 18 U.S.C. § 3553(a). That section provides that the court shall impose a sentence sufficient, but not greater than necessary, to comply with the sentencing purposes set forth in § 3553(a)(2).

The court is to consider the need for the sentence imposed: (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

Among the other six factors the court is to consider is the applicable sentencing guideline range. See Section 3553(a)(4)(A). Section 3553(b) advises the court on how to apply the guidelines. The guidelines are now of course advisory, and § 3553(b)(1) authorizes the court to vary from the advisory guideline imprisonment range if "the court finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that would result in a sentence different from that described." This section compliments the Sentencing Commission's advice to the district court in § 2B1.1 that

an upward departure may be warranted if the applicable guidelines do

not take into account the seriousness of the defendant's criminal

conduct.

For all of these reasons, the United States believes that an

upward departure at step two is warranted pursuant to § 5K2 as well as

the Application Notes to § 2B1.1.  Additionally, an upward variance to

the currently determined advisory guideline imprisonment range is

likewise justified under 18 U.S.C. § 3553(b) at step three.

## III.    <u>CONCLUSION</u>

The United States respectfully requests the Court to rule as

follows:

(1)  Adopt in its entirety the presentence report
and addendum submitted by Probation Officer
Vought;

(2)  If the Court decides any or all of the
defendant's objections to the presentence report
in his favor then the Court at step two should
depart upward  pursuant to U.S.S.G. § 5K.2 and
Application Note 20(A) to U.S.S.G § 2B1.1to
offense level 31 and impose a sentence within the
advisory custody range of 108-135 months;

(3)  Alternatively, should the Court find for the
defendant on any or all of his objections to the
presentence report and decline to depart upwards
under the guidelines then the Court should at

step three upwardly vary to the same advisory
guideline imprisonment range of 108-135 months
pursuant to 18 U.S.C. § 3553(b).

A sentence within that advisory guideline imprisonment range of

108-135 months is sufficient but not greater than necessary to address

the sentencing purposes of 18 U.S.C. § 3553(a)(2).

Respectfully submitted,

PETER J. SMITH
UNITED STATES ATTORNEY

/s/ WILLIAM A. BEHE
WILLIAM A. BEHE
Assistant U.S. Attorney
228 Walnut Street
P.O. Box 11754
Harrisburg, PA 17108
717/221-4482 (Office)
717/221-2246 (Fax)
Email:  William.Behe@usdoj.gov
Bar No. PA-32284

# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | Criminal Nos.  1:CR-10-183 |
| | ) | 1:CR-11-003 |
| v. | ) | (Judge Rambo) |
| | ) | |
| DAVID RICHARD DODD, II | ) | |

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that he is an employee in the Office of the United States Attorney for the Middle District of Pennsylvania and is a person of such age and discretion to be competent to serve papers.

That this 21st day of February 2014, he caused to be served a copy of the attached

## GOVERNMENT'S SENTENCING MEMORANDUM

by placing said copy in a postpaid envelope addressed to the person hereinafter named, at the place and address stated below, which is the last known address, and by depositing said envelope and contents in the United States Mail at Harrisburg, Pennsylvania and/or by electronic means by sending a copy to the e-mail addresses stated below:

ADDRESSEE(S):
Jordan D. Cunningham, Esquire
Email:  jdc@cclawpc.com

/s/  WILLIAM A. BEHE____
WILLIAM A. BEHE
ASSISTANT U.S. ATTORNEY